ORIGINAL

CC: LEK
paid

Hannah K. Heart
5339 Poola St.
Honolulu, HI 96821
(808)780-6836
hannahheartinhawaii@yahoo.com

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

APR 05 2023

at 12 o'clock and 10 min. A M
CLERK, U.S. District Court

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI'I
HONOLULU DIVISION

CV23  00158

**HANNAH K. HEART**
                    *Plaintiff,*

*vs.*

**THE BANK OF NEW YORK MELLON
FKA THE BANK OF NEW YORK,
AS TRUSTEE FOR THE CERTIFICATE
HOLDERS OF THE CWALT, INC.,
ALTERNATIVE LOAN TRUST 2006-OA21,
MORTGAGE PASSTHROUGH
CERTIFICATES, SERIES 2006-OA21**

**SHELLPOINT MORTGAGE**

**BANK OF AMERICA FKA
COUNTRYWIDE BANK**

**ENVISION LENDING GROUP**

**FIRST MAGNUS FINANCIAL CORP.**

**MORTGAGE CONNECTIONS INC.**

**SELECT PORTFOLIO SERVICE**

**MR. COOPER FKA BAYVIEW LOAN SERVICING**

**MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. AKA MERS®**

**DOES 1 – 100, INCLUSIVE,**
                    *Defendants*

CASE NO.:  **LEK WRP**

<u>COMPLAINT FOR:</u>

1. **DECLARATORY RELIEF,**

2. **INJUNCTION RELIEF,**

3. **CONTRACTUAL FAITH FAIR DEAL**

4. **VIOLATION OF TILA,**

5. **VIOLATION OF RESPA,**

6. **VIOLATION OF UDAP,**

7. **RECISSION,**

8. **BREACH OF FIDUCIARY DUTY,**

9. **UNCONSCIONABILITY,**

10. **PREDATORY LENDING,**

11. **QUIET TITLE,**

12. **LACK OF STANDING**

<u>EXHIBITS "A" through "G"</u>

## I.    PRELIMINARY STATEMENT / INTRODUCTION (FRCP §8a)

COMES NOW, HANNAH K. HEART, a consumer (hereafter "*Plaintiff*"), is, and at all times herein mentioned, was an individual consumer and homeowner, and a resident of the State of Hawai'i. She responded to an advertising from Defendant First Magnus Financial Corporation, An Arizona Company (hereinafter "MFC") to help her purchase her property located at 5339 Poola St., Honolulu, HI 96821 (hereinafter "Subject Property"). Sometime later Mortgage Connections Inc (hereinafter "MCI") advertised to the plaintiff a HELOC to help close the first loan with MFC. Later on Countywide Bank, now Bank of America solicited (hereinafter "Countrywide") to plaintiff a usury loan unbeknownst to plaintiff as will be shown herein. FMC, MCI and Countrywide are liable for treble damages pursuant to the Racketeering Influence and Corrupt Organizations Act (18 U.S.C. §§1961, et seq.), statutory damages pursuant to the Truth In Lending Act (16 U.S.C. §1601, et seq.), Hawai'i Law, punitive damages Hawai'i Misrepresentation and Deception under §480-2 of the Hawai'i Rev. Stat. under the Unfair or Deceptive Acts and Practices, in construing this section, the courts and the office of consumer protection shall give due consideration to the rules, regulations, and decisions of the Federal Trade Commission and the federal courts interpreting section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), Hawai'i Deceptive Trade Practices Laws (HI Rev. Stat. §481A-3 and HI Penal Code §708-871, Hawai'i Consumer Protection HRS 476-2, and plain old fraud under the Pendent Jurisdiction of this court. Plaintiff furthermore seeks declaratory and injunctive relief to end those practices and prevent further losses to the Plaintiff, and to save her property from destruction, theft and to enjoin foreclosure, or forfeiture.  Truth in Lending Act at Regulation Z, 12 C.F.R. §1026

*formerly* §226 ("Regulation Z")[1] and 15 U.S.C. §1666. Petitioner also seeks further damages for defendant's violations of Title 12 C.F.R. §226.39 – Mortgage transfer disclosures.[2]

## II.    JURISDICTION (FEDERAL QUESTION)

The transactions and events which are the subject matter of this Complaint all occurred within the County of Honolulu, State of Hawai'i. The Subject Property is located within the County of Honolulu, State of Hawai'i. Jurisdiction is conferred on this Court by 15 U.S.C. §1640(l) and 28 U.S.C. §§1331, 1337. The Court has authority to issue a declaratory judgment by virtue of 28 U.S.C. §2201. This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. §1367. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because a substantial portion of the events and omissions giving rise to this Complaint occurred within the district.

## III.    PARTIES

1.    At all times relevant herein, Plaintiff was over the age of eighteen and is and was a resident of the County of Honolulu, Hawai'i, and the address aforementioned is the Subject Property.

2.    Plaintiff purportedly entered into a loan repayment and security agreement on or about October 26, 2005 with Defendant Countrywide now Bank of America originally which

---

[1] If the one-year statute of limitations has not yet expired, the court may award statutory and actual damages for disclosure violations that occurred at the time the transaction was consummated. See Truth in Lending Act Chapter (TILA) §10.9.4. In addition, the creditor's failure to respond properly to the consumer's rescission notice is an independent violation, and the one-year statute of limitations for damages for that violation starts running with that failure. *Id.* See also §10.6.4, *supra*.

[2] Title 12 § 226.39 (regulation Z) part (a), For purposes of this section, a servicer of a mortgage loan shall not be treated as the owner of the obligation if the servicer holds title to the loan, or title is assigned to the servicer, solely for the administrative convenience of the servicer in servicing the obligation [...] A servicer does not have the rights of a holder in due course and therefore, do not have the right to foreclose.

HANNAH K. HEART V. BANK OF NEW YORK MELON, ET AL.
ORIGINAL COMPLAINT

required Plaintiff to repay an alleged loan in the amount of $1,140,000 after a down payment of $300,000. The Borrower was approved for the loan in the amount of $1,000,000 on a first mortgage and $140,000 as a second mortgage for a 30-year fixed with an interest rate of 6.952% on the first and 7.013% on the second. In 2006 the loan was refinanced to a subprime loan by Envision Lending Group (the broker) who acted as a Table Funder / Correspondent Lender in which the Note and Deed was made in Envision Lending Groups name and then said security was sold off to Countrywide without express written consent of the borrower, and the loan was transferred/assigned to Select Portfolio Service on July 21, 2011, then to Bayview December 5, 2014 and finally to NewRez dba Shellpoint in February of 2019.

3.    Plaintiff is informed and therefore alleges that Defendant First Magnus Financial Corporation may be served process at 603 North Wilmot Road, Tucson, Arizona 85711.

4.    Plaintiff is informed and therefore alleges that Defendant Mortgage Connection Incorporated may be served process at 1221 Kapiolani Blvd, Ste 1048 Honolulu HI 96814.

5.    Plaintiff is informed and therefore alleges that Defendant Bank of America Corporation may be served process at 100 North Tryon Street, Charlotte, NC 28255.

6.    Plaintiff is informed and therefore alleges that Defendant The Bank of New York Mellon may be served process at 240 Greenwich Street, New York, NY 10286.

7.    Plaintiff is informed and therefore alleges that Defendant Shellpoint Mortgage Servicing may be served process at 75 Beattie Place, Suite LL202, Greenville, SC 29601.

8.    Plaintiff is informed and therefore alleges that Defendant Envision Lending Group may be served process at 2455 E Parleys Way # 115, Salt Lake City, UT 84109.

9.    Plaintiff is informed and therefore alleges that Defendant Select Portfolio Servicing, Inc. may be served process at 3217 S. Decker Lake Drive Salt Lake City, UT 84119.

10.    Plaintiff is informed and therefore alleges that Defendant Mr. Cooper Mortgage Company may be served process at 8950 Cypress Waters, Building One, Coppell, TX 75019.

11.    Plaintiff is informed and therefore alleges that Defendant Mortgage Electronic Registrations System, Inc. may be served process at 11819 Miami St., Suite 100, Omaha, NE 68164.

12.    The Defendants (each of them named in paragraphs 1 through 9 above, shall collectively be referred to as "Defendants") named herein "all persons unknown", claiming any legal or equitable right, title estate, lien or interest in the property described in this Complaint adverse to Plaintiff's title thereto and as DOES 1 through 100 (hereinafter referred to as "Unknown Defendants") are unknown to Plaintiff.

13.    Each Defendant claim some right, title, estate, lien or interest in the Subject Property hereinafter described adverse to Plaintiff's title and their claims and each of them constitute a cloud on Plaintiffs title to the Subject Property.

14.    Plaintiff is informed and therefore believes, and on that basis alleges that each fictitiously named herein as a DOE is responsible for the events happening hereinafter alleged. Plaintiff will seek leave of the Court to amend this Complaint to allege the true names and capacities of said fictitiously named Defendant's when ascertained.

15.    Plaintiff is informed and therefore believe and, on that basis, allege that at all times mentioned herein, the Unknown Defendants are individuals and/or business entities whose forms are unknown and were agents, principals, employees, employers and co-conspirators of each and every other named or unnamed Defendant in this Complaint. Plaintiff is informed and therefore alleges that each of said Defendants is and at all relevant times herein, was acting within the scope and consent of the remaining named and unnamed Defendants.

16.    Whenever in this Complaint an act or omission of a corporation or business entity is alleged, the allegation shall be deemed to mean and include an allegation that the corporation or business entity acted or omitted to act through its authorized officers, directors, agents, servants, and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by corporate managerial officers or directors, and that the act or omission was ratified by the officers and directors of the corporation or business entity.

17.    Defendants, and each of them, failed to provide the requisite Federal forms and disclosures including but not limited to the Truth In Lending Act, Equal Opportunity Credit Act, Fair Lending/Fair Debt Collection Act as well as others.

18.    It is also the responsibility of the lender and brokers to verify that the borrower has the ability to repay the credit that has been extended. A departure from the fundamental principles of loan underwriting will form the basis of abusive lending.  Lending without a determination that a borrower can reasonably be expected to repay the loan from resources other than the collateral securing the loan, and relying  instead on the foreclosure value of the borrower's collateral to recover principal, interest and fees. The underwriting on this loan was severely flawed. There was no determination of the borrower to repay the loan, with complete disregard for the Guidance Letters issued by Federal Agencies and even Federal and State Law.

19.    As a result of their mortgage activities, Defendants and each of them are and were subject to and must comply with the Federal Truth In Lending Act (hereinafter referred to as "TILA")[15 U.S.C. §§1601-1666j], [24  C.F.R. §§3500.1-3500.17];  the  Real  Estate Settlement Procedures Act (hereinafter referred to as "RESPA") [12 U.S.C. §2601 et. seq.]; 24 Code of Federal Regulations §3500.10; §10241.3; Unfair and Deceptive Business Practices and  Acts  (UDAP Statutes]; among others.

20.    At all times relevant hereto, the Defendant, in the ordinary course of its business, regularly[3] extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments.[4] In order to validate this debt and audit this account, plaintiff requires documentary evidence to be provided to me as well as all required material disclosures.[5] As such discovery, interrogatories and admissions are requested for but no limited to the following:

1.  Any certificated or uncertificated security, front and back, used for the funding of account # 0579477247

2.  Any and all "Pooling & Servicing Agreement(s)" including account # 0579477247 between NewRez LLC dba Shellpoint Mortgage Servicing and any government sponsored entity, hereinafter (GSE).

3.  Any and all "Deposit Agreement(s)" regarding account # 0579477247 or the "Pooling and Servicing Agreement(s)" including account # 0579477247 between NewRez LLC dba Shellpoint Mortgage Servicing and any GSE.

4.  Any and all "Servicing Agreement(s)" between NewRez LLC dba Shellpoint Mortgage Servicing and any GSE.

5.  Any and all "Custodial Agreement(s)" between NewRez LLC dba Shellpoint Mortgage Servicing and any GSE.

6.  Any and all "Master Purchasing Agreement(s)" between NewRez LLC dba Shellpoint Mortgage Servicing and any GSE.

---

[3] See Reg. Z § 1026.2(a)(17)(v) [formerly § 226.2(a)(17)(v)] (definition of "regularly extends consumer credit"). See TILA §2.3.3.

[4] A rescission action may also be brought against an assignee, regardless of whether the assignee is a "creditor" or whether the violation was apparent on the face of the disclosure statement. 15 U.S.C. § 1641(c). See § 10.9, *supra*.

[5] 15 U.S.C. §44

7. Any and all "Issuer Agreement(s) between NewRez LLC dba Shellpoint Mortgage Servicing and any GSE.

8. Any and all "Commitment of Guarantee" Agreement(s) between NewRez LLC dba Shellpoint Mortgage Servicing and any GSE.

9. Any and all "Release of Document Agreements" between NewRez LLC dba Shellpoint Mortgage Servicing

10. Any and all "Master Agreement for servicer's principle and Interest Custodial Account" between NewRez LLC dba Shellpoint Mortgage Servicing and any GSE.

11. Any and all "Servicers Escrow Custodial Account" between NewRez LLC dba Shellpoint Mortgage Servicing  and any GSE.

12. Any and all "Release of Interest" agreements between NewRez LLC dba Shellpoint Mortgage Servicing and any GSE.

13. Any Trustee agreement(s) between NewRez LLC dba Shellpoint Mortgage Servicing and THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2006-OA21, MORTGAGE PASSTHROUGH CERTIFICATES, SERIES 2006-OA21 trustee regarding account no. 0579477247 or pooling and servicing accounts with any GSE.

14. Please send to the requester a copy of any documentation evidencing any trust relationship regarding the Mortgage and any Note in this matter.

15. Please send to the requester a copy of any and all Documents establishing any Trustee of record for the Mortgage and any Note.

16. Please send to the requestor a copy of any and all document(s) establishing the date of any appointment of Trustee Mortgage and any Note. Please include any and all assignments, or transfers or nominees of any substitute trustee(s).

17. Please send to the requestor a copy of any and all document(s) establishing any Grantee for this Mortgage and any Note.

18. Please send to the requestor a copy of any and all document(s) establishing any Beneficiary for this Mortgage and any Note.

19. Please send to the requestor a copy of any and all document(s) establishing any Grantor for this Mortgage and any Note.

20. Please send to the requestor any documentation evidencing the Mortgage is NOT a constructive trust or any other form of a trust.

21. All data, information, notations, text, figures, and information contained in your mortgage servicing and accounting computer systems including, but not limited to Alltel, Fidelity CPI system, or any other similar mortgage servicing software used by you , any servicers, sub servicers, of this mortgage account from the inception of this account to the date written above.

22. All descriptions and legends of all Codes used in your mortgage servicing and accounting system so that the examiners, auditors, and experts retained to audit and review this mortgage account may properly conduct their work.

23. All assignments, transfers, allonge or other document evidencing a transfer sale or assignment of this mortgage, monetary instrument, or other document that secures payment by me to this obligation in this account from the inception of this account to the present date including any such assignments on MERS.

24. All records, electronic or otherwise of assignments of this mortgage monetary instrument or servicing rights to this mortgage including any such assignments to/on MERS.

25. All deeds in lieu, modifications to this mortgage, monetary instrument, from the inception of this account to the present date.

26. Any and all additional documentary evidence pursuant to 15 U.S.C. §44 which includes all papers, correspondence, books of accounting and financial as well as corporate records, including all material disclosures as defined in 15 U.S.C. §1602(v) as well as any and all disclosures required by 15 U.S.C. §1639(a) signed and dated by all parties to the transaction.

## BACKGROUND, HISTORY AND TIMELINE OF LOANS

### ORIGNIAL LOAN:
### FIRST MAGNUS FINANCIAL CORPORATION

21.    Plaintiff denies ever receiving a loan, and denies the debt alleged owned in totality.

22.    On or about December 20, 2005, Plaintiff entered into a consumer credit transaction (the "transaction") account no. 9205013480 with First Magnus Financial Corporation, An Arizona Company, including without limitation all successors, agent and assigns[6] who sold the acceptance to Defendant at discount in which the extended consumer credit was subject to a finance charge[7] and which was initially payable to Defendant.

---

[6] Assignees are fully liable for rescission regardless of whether the violation is apparent on the face of the documents. See §10.9, supra. However, an assignee's liability for damages for disclosure violations depends on whether they are apparent on the face of the disclosure statement and other documents. See §12.3.2, supra.

[7] If the credit was not subject to a finance charge, then it must be alleged that it was "payable by written agreement in more than four installments." See Reg. Z §1026.2(a)(17)(i)(A) [formerly §226.2(a)(17)(i)(A)]; §2.3, supra.

23.    A true and accurate copy of the credit agreement evidencing the transaction is attached hereto, marked petitioner's Exhibit A, and by this reference is incorporated herein.

24.    As part of this consumer credit transaction, the Defendant retained a security interest in the note, which is Plaintiff's security instrument.

25.    The security interest was not created to finance the acquisition of Plaintiff's home.

26.    A copy of the alleged mortgage evidencing the Defendant's security interest in the amount of $1,000,000.00 is attached hereto, marked petitioner's Exhibit B, and by this reference is incorporated herein.

27.    The Truth in Lending disclosure statement issued in conjunction with this consumer credit transaction listed an annual percentage rate of 6.875%, finance charges in the amount of $1,541,666.39 and an amount financed in the amount of $988,585.42 attached as petitioner's Exhibit C.

### SECOND LOAN (HELOC):
### MORTGAGE CONNECTION, INC.

28.    Plaintiff denies ever receiving a loan, and denies the debt alleged owned in totality.

29.    On or about October 26, 2005 Plaintiff entered into a consumer credit transaction (the "transaction") with Mortgage Connections Inc. account no. 9205013692 for a HELOC closing simultaneously with the first "loan" including without limitation all successors, agent and assigns[8] who sold the acceptance to Defendant at discount in which the extended consumer credit was subject to a finance charge[9] to be paid by the plaintiff and which was initially payable to Defendant.

---

[8] Assignees are fully liable for rescission regardless of whether the violation is apparent on the face of the documents. See § 10.9, supra.  However, an assignee's liability for damages for disclosure violations depends on whether they are apparent on the face of the disclosure statement and other documents. See § 12.3.2, supra.

[9] If the credit was not subject to a finance charge, then it must be alleged that it was "payable by written agreement in more than four installments." See Reg. Z §1026.2(a)(17)(i)(A) [formerly §226.2(a)(17)(i)(A)]; §2.3, supra.

30.     A true and accurate copy of the credit agreement evidencing the transaction is attached hereto, marked petitioner's Exhibit E, and by this reference is incorporated herein.

31.     As part of this consumer credit transaction, the Defendant retained a security interest in the note, which is Plaintiff's security instrument.

32.     The security interest was not created to finance the acquisition of Plaintiff's home.

33.     A copy of the alleged mortgage evidencing the Defendant's security interest in the amount of $139,391.67 is attached hereto, marked petitioner's Exhibit F, and by this reference is incorporated herein.

34.     The Truth in Lending disclosure statement issued in conjunction with this consumer credit transaction listed an annual percentage rate of 7.013% interest, finance charges in the amount of $219,108.83 and an amount financed in the amount of $139,391.67 attached as petitioner's Exhibit G.

## REFINANCE:
## BANK OF AMERICA HOME LOAN SERVICING, LP
## FORMERLY, COUNTRYWIDE BANK, N.A.

35. Plaintiff denies ever receiving a loan, and denies the debt alleged owned in totality. On or about December 1, 2006 Plaintiff entered into a consumer credit transaction (the "transaction") with Countrywide Bank, N.A., account no. 154134042, including without limitation all successors, agent and assigns[10] who sold the acceptance to Defendant at discount in which the extended consumer credit was subject to a finance charge[11] and which was initially payable to

---

[10] Assignees are fully liable for rescission regardless of whether the violation is apparent on the face of the documents. See § 10.9, supra. However, an assignee's liability for damages for disclosure violations depends on whether they are apparent on the face of the disclosure statement and other documents. See § 12.3.2, supra.

[11] If the credit was not subject to a finance charge, then it must be alleged that it was "payable by written agreement in more than four installments." See Reg. Z § 1026.2(a)(17)(i)(A) [formerly §226.2(a)(17)(i)(A)]; §2.3, supra.

Defendant. Loan was originated by Envision Lending Group, which was a usurious loan that was originated based on subprime terms, and caused more harm to the consumer and had the consumer not defaulted would have cost her a total of $4,431,083.88 on an amount financed of $1,152,350.40 at an interest rate of 8.350% with a Monthly Adjustable Rate Pay Option Note, MTA-Twelve Month Average Index- Payment Caps, and before each Interest Rate Change date, the note holder will calculate the new interest rate by adding three & three-eighths percentage point(s) 3.375% to the current index, which will then be rounded to the nearest one-eighth of one percentage point (0.125%). This rounded amount would then be the new interest rate until the next Interest Rate Change Date, with the interest rate never being greater than 9.950% or lower than the margin.

## ACTUAL ALLEGATIONS
### (ANALYSIS)

36.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

37.    The terms of the consumer credit transaction with Envision Lending Group by and through Countrywide are not clear or conspicuous, nor consistent, and are illegal, and include, for example, extremely high ratios with respect to Plaintiff's Income and Liabilities. Plaintiff was given a loan instead of a consumer credit transaction, that was false and misleading, deceptive, and the Defendant(s) knowingly and willingly originated a subprime mortgage. The loan was more expensive in terms of fees, charges and or interest rates than alternative financing for which Plaintiff could have qualified.  The terms of the loan given to the Plaintiff are such that he can never realistically repay the loan, and would end up paying over $2M in interest on top of the principle balance.

38.    The fees for this loan were equally egregious. This loan required the Plaintiff to pay interest rates, fees and/or charges not justified by marketplace economics in place at the time the lien was originated.

39.    For years, mortgage brokers and lenders have been selling loan products that they knew or should have known would never be able to be repaid by the borrower and would prevent borrowers from ever actually owning the home. Instead, borrowers were offered interest-only, negative amortization, and/or other subprime loan products that amounted to no more than a short-term lease until the payments became so unaffordable that the borrowers are now faced with either bankruptcy or foreclosure. The housing bubble of the past decade was created by predatory lending practices, such as charging excessive fees, incorporating payment penalties, negative amortization payments, or other abusive terms in the agreements, providing kickbacks to brokers, flipping loans, using balloon payments to conceal the true burden of the financing, requiring unnecessary insurance and other products, including mandatory arbitration clauses, steering borrowers to subprime loans when they qualify for conventional loans, and using bait and switch tactics. All were rampant within the industry without oversight or good judgment and found to be inconsistent with important national objectives, including the goals of fair access to credit, community development, and stable homeownership by the broadest spectrum of America. Rather than offering a loan product that was viable and long-term for the borrower and lender, brokers and lenders greedily sold whatever they could get away with, arguably the primary catalyst for what is now this country's worst economic crisis since the Great Depression.

40.    The Defendant's utilized excessive closing costs/fees that are actionable for treble damages pursuant to 12 U.S.C. §2607.

41.     Plaintiff is informed and believes and therefore alleges that based on a Real Income Analysis, with the type of take-home income Plaintiff possesses and that was clearly disclosed to Defendants, that the borrower would not be able to support the home payment over an extended period.

42.     Plaintiff is informed and believes and therefore alleges that Defendants failed to provide Plaintiff with written notice of the furnishing of negative credit information to consumer reporting agency after Defendants furnished such negative credit information about Plaintiff.

43.     Plaintiff is informed and believe and therefore allege that Defendants breached their fiduciary duty to Plaintiff because they knew or should have known that the Plaintiff would or had a strong likelihood of defaulting on this loan, they have a fiduciary duty to the Plaintiff to not place them in that loan (in harm's way).

44.     Plaintiff is informed and believes and therefore alleges that as a result of the Practices of Defendants, and each of them throughout the handling of this loan, that such practices are consistent with the definition of predatory lending, and encompass numerous characteristics that indicate such.

45.     Plaintiff is informed and believes and therefore alleges that Defendants providedinadequate disclosure of the true costs, risks and, where necessary, appropriateness to the borrower of loan transactions in violation of the Federal Trade Commission Act.

46.     Plaintiff is informed and believes and therefore alleges that Defendants engaged in unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising in violation, rising to unfair and deceptive business practices, in violation of the Unfair and Deceptive Acts and Practices statutes.

COUNT I
Declaratory Relief
(Against All Defendants)

47.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

48.    An actual controversy has arisen and now exists between Plaintiff and Defendants regarding their respective rights and duties, in that Plaintiff contends that Defendants did not have the right to foreclose on the Subject Property because Defendants' security interest in the Subject Property has been rendered void by operation of law, pursuant to 24 Code of Federal Regulations 3500.10, UDAP, TILA and RESPA. Thus the purported power of sale by Defendants no longer applies. Plaintiff further contends that Defendants do not have the right to foreclose on the Subject Property because Defendants did not properly comply with proper delivery procedures under RESPA. Plaintiff further contends that the Defendants perpetrated a fraudulent loan transaction.

49.    Plaintiff request that this Court find the purported power of sale contained in the Loan of no force and effect at this time, because Defendants actions in the processing, handling and attempted foreclosure of this loan has contained numerous violations of State and Federal laws designed to protect borrowers, which has directly caused Plaintiffs to be at an equitable disadvantage to Defendants. Plaintiff further request that title to the Subject Property remain in Plaintiff's name, with said Deed of Trust remaining in beneficiaries' name, during the pendency of this litigation. As a result of the Defendants' actions, Plaintiff has suffered damages according to proof, and seeks declaratory relief that Defendants' purported power of sale is void and has no force or effect against the Subject Property.

50.    Further, Defendants' actions have been willful, knowing and malicious.

## COUNT II
### Injunctive Relief
### (Against All Defendants)

51.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

52.     Defendants commenced an adverse or foreclosure action under the Note and sold the property at a non-judicial sale. Said sale has caused the Plaintiff great and irreparable injury to her consumer rights, as no adverse actions may arise during a billing error resolution per TILA.

53.     The wrongful conduct of Defendants, unless restrained and enjoined by an order of the court, will cause great and irreparable harm to Plaintiff. Plaintiff will not have the beneficial use and enjoyment of the property and will lose his home. Plaintiff has no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiff. Plaintiff has suffered and will continue to suffer in the future unless Defendants' wrongful conduct Is restrained and enjoined because real property is inherently unique and it is and will be impossible for Plaintiff to determine the precise amount of damage Plaintiff will suffer.

WHEREFORE, Plaintiff prays for relief as set forth below.

## COUNT III
### Contractual Breach of Implied Covenant of Good Faith and Fair Dealing
### (Against All Defendants)

54.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

55.     Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.  This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or

injuring the rights of the other party to receive the benefits of their agreement. The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose. This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

56.    The terms of the Loan imposed upon Defendants a duty of good faith and fair dealing in this matter.

57.    Defendants enjoyed substantial discretionary power affecting the rights of Plaintiff during the events alleged in this Complaint. Defendants were required to exercise such power in good faith.

58.    Defendants willfully breached their implied covenant of good faith and fair dealing with Plaintiff when Defendants:

    a.  Willfully withheld numerous disclosures;

    b.  Willfully withheld notices in regard to excessive fees and closing costs; below standard and non-diligent underwriting standards, Yield Spread Premiums Disclosures of additional income due to interest rate increases, and failure to disclose when negative credit scores were disseminated and failure to provide disclosures of interest rates, business affiliations, kickback fees, hidden referral fees.

    c.  Willfully placed Plaintiffs in a loan that he did not qualify for, could not afford, and subjected them to further financial detriment, while providing Defendants with financial benefits they would not have otherwise enjoyed.

59.    As a result of Defendants' breach of this covenant, Plaintiff has suffered injury and has caused Plaintiff the threat of loss of his home. Plaintiff has incurred and continues to incur legal fees, including attorney fees and costs, as well as expenses to right this wrong.

60.    Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiff to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

WHEREFORE, Plaintiff pray for relief as set forth below.

## COUNT VI
### Violation of TILA, 15 U.S.C. §1601, et seq.
### (Against All Defendants)

61.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

62.    TILA applies because the transaction involves the extension of credit to a consumer for personal, family or household purposes that is subject to a finance charge and/or payable by written agreement in more than four installments per 15 U.S.C. §§ 1601-1666j.

63.    This consumer credit transaction was subject to the Plaintiff's right of rescission as described by 15 U.S.C. § 1635 and Regulation Z §1026.23 – 12 C.F.R. §1026.23 *formerly* §226.23.[12] Plaintiff is a consumer within the meaning of 15 U.S.C. §1602(i), §1602(h) prior to Dodd-Frank amendments] and Regulation Z §1026.2(a)(11) *formerly* §226.2(a)(11). In the course of this consumer credit transaction, Defendant violated 15 U.S.C. §1635(a) and Regulation Z § 1026.23(b) *formerly* § 226.23(b) by failing to deliver to the Plaintiff two copies of a notice of the right to rescind that:[13]

1)  Identified the transaction.

2)  Clearly and conspicuously disclosed the security interest in the Plaintiff's home.

---

[12] If the transaction is open-end, the applicable provision of Regulation Z is §1026.15 *formerly* § 226.15.

[13] See § 10.4.4, *supra*. This paragraph is premised on the presumption that no notice of rescission was issued. If a notice of rescission was issued but it was defective, a copy of the defective notice should be attached and its defects itemized. If the notice of rescission was issued and was adequate, this paragraph should be omitted.

3) Clearly and conspicuously disclosed the Plaintiff's right to rescind the transaction.

4) Clearly and conspicuously disclosed how to exercise the right to rescind the transaction, with a form for that purpose, designating the address of the Defendant's place of business.

5) Clearly and conspicuously disclosed the effects of rescission.

6) Clearly and conspicuously disclosed the date the rescission period expired.

The disclosure statement issued in conjunction with this consumer credit transaction, and attached as petitioner's Exhibit C, violated the requirements of the act and Regulation Z in the following and other respects:

1) By failing to include in the finance charge certain charges imposed by the Defendant payable by Plaintiff incident to the extension of credit as required by 15U.S.C. § 1605 and Regulation Z, § 1026.4 [*formerly* §226.4], thus improperly disclosing the finance charge in violation of 15 U.S.C. § 1638(a)(3) and Regulation Z, §1026.18(d) *formerly* §226.18(d). Such amounts include, but are not limited to:[14]

   i) The broker fee of $41,321.20, with $40,818.75 paid at closing to Envision Lending Group This did not include a $495 processing fee or $695.00 broker application fee; which was not a "*bona fide and reasonable*" fee; and was the basis of a usurious loan.[15]

   ii) The credit report fee of $12.95, which was not a "*bona fide and reasonable*" fee;

---

[14] It can be useful to attach a copy of the HUD-1 to the complaint in order to make reference to the various fees improperly excluded from the finance charge.

[15] *See* § 3.7.4, *supra* (treatment of broker fees).

iii) The recording fees in excess of the actual recording fees, or $58.00, which are therefore not a bona fide and reasonable" fee;[16]

iv) The Settlement / Closing fee of $750.00.[17]

v) The down payment of $0.00.[18]

2) By improperly including components of the finance charge, including but not limited to those itemized in Paragraph 16(a) herein, in the amount financed, the Defendant improperly disclosed the amount financed in violation of 15 U.S.C. §1638(a)(2) and Regulation Z, §1026.18(b) *formerly* §226.18(b); and

3) By calculating the annual percentage rate (APR) based upon improperly calculated and disclosed finance charges and amount financed, 15 U.S.C. §1606, Regulation Z, §1026.22 formerly §226.22, the Defendant understated the disclosed annual percentage rate in violation of 15 U.S.C. §1638(a)(4) and Regulation Z, §1026.18(c) *formerly* §226.18(c).

64.    The disclosures improperly made by Defendant, as itemized in paragraph 16, are material disclosures[19] as defined in the Truth in Lending Act, 15 U.S.C. § 1602(v) [§ 1602(u) prior to Dodd-Frank amendments], Regulation Z, § 1026.23(a)(3)(ii) *formerly* §§ 226.23(a)(3) n.48, 226.32(c).[20] The finance charge and APR were under disclosed by more than the tolerance levels

---

[16] *See* § 3.9.6.3.3, *supra* (discussion of how much of an inflated fee must be included in the finance charge).

[17] See § 3.9.6.2.4, *supra* (discussion of when a closing fee may be included in the finance charge in a mortgage transaction).

[18] Down payment is in violation of 15 U.S.C. §1662(2). It is an offense to require any down payment in connection with a consumer credit transaction.

[19] "Material" disclosures are defined at 15 U.S.C. § 1602(u); Reg. Z §1026.23(a)(3)(ii) *formerly* § 226.23(a)(3), n.48. The list of violations in this Complaint is not an inclusive list of every possible "material" violation, but it does represent some common "material" violations. See §§ 10.4.3, 10.4.4, *supra*.

[20] If the plaintiff seeks damages for these disclosure violations against the assignee, the complaint should also allege that they were apparent on the face of the documents.

set forth in 15 U.S.C. § 1605.[21] By reason of those material violations of 15 U.S.C. §1638, Plaintiff

has a right of rescission for three years from the date of consummation of the loan pursuant to 15

U.S.C. § 1635(f) or at the on sight of fraud

65.    On February 12, 2023, the Plaintiff rescinded the transaction by sending to

Defendant at their last known address via their February 9, 2023 payoff statement 75 Beattie Place,

Suite LL202, Greenville, SC 29601, in accordance with 12 C.F.R. §1026.23(a)(2). Consumer gave

creditor 21 days to respond in writing to her address, per the 15 U.S.C. §1666 by U.S. Mail.[22] See,

also "*mailbox rule*." A true and accurate copy of that notice of rescission is attached hereto, marked

petitioner's Exhibit D, and by this reference is incorporated herein. However, such form was not

provided in the loan package provided at closing. Defendant was to receive a consumer credit

transaction not a conventional loan. Defendant received copies of the Plaintiff's notice of

rescission on or about February 12, 2023 and was defaulted on March 17, 2023.[23]

66.    The Defendants have failed to take any action necessary or appropriate to reflect

the termination of any security interest created under the transaction, including the security interest

described in Paragraph 8, as required by 15 U.S.C. § 1635(b) and Regulation Z §1026.23(d)(2)

---

[21] Note that under 15 U.S.C. §1635(i)(2) the tolerance for inaccuracies in the finance charge and related disclosures is only $35 if the consumer exercises rescission rights after the initiation of any judicial or nonjudicial foreclosure process; if a foreclosure process has been initiated, this fact should be pleaded. A chart setting forth the tolerance levels for the finance charge disclosures is at §5.4.3.6, *supra*. The APR tolerance levels are discussed at §5.5.4, *supra*.

[22] *See* Appx. D, *supra* (*sample TILA rescission notice*). Neither the Act nor Reg. Z requires anything more than sending the notice of rescission by mail (or telegram or other means of written communication). *See* §10.6.2, *supra*. However, if litigation is contemplated, and it is often necessary in rescission actions, then sending the notice by certified mail, return receipt requested will eliminate most factual issues as to when the notice was sent, when it was received and who received it. These pleadings should be modified if the notice was sent in some other fashion (for example, by ordinary, first-class mail).

[23] If, as sometimes happens, the lender has sent a letter refusing to honor the rescission, that letter could be attached to the complaint.

*formerly* § 226.23(d)(2). The Defendants have failed to return to the Plaintiff any money or property given by the Plaintiff to anyone, including the Defendants, as required by 15 U.S.C. §1635(b) and Regulation Z §1026.23(d)(2) *formerly* §226.23(d)(2).

      67.    As a result of the aforesaid violations of the Act and Regulation Z, pursuant to 15 U.S.C. §§ 1635(a), 1640(a), and 1641(c), Defendants are liable to Plaintiff for:

    a.   Rescission of this transaction.

    b.   Termination of any security interest in petitioner's property created under the transaction.

    c.   Return of any money or property given by the Plaintiff to anyone, including the Defendants, in connection with this transaction.

    d.   Statutory damages of $4,000 for the disclosure violations.[24]

    e.   Statutory damages of $4,000 for Defendants' failure to respond properly to petitioner's rescission notice.[25]

    f.   Forfeiture of return of loan proceeds.[26]

    g.   Actual damages in an amount to be determined at trial.[27]

---

[24] Currently, 15 U.S.C. § 1640(a)(2)(A)(iii) sets a $400 minimum/$4,000 maximum for statutory damages in connection with closed-end, real-estate or dwelling-secured transactions ($200/$2,000 for violations prior to July 30, 2008). See §11.6.3, *supra*. An affirmative claim for damages for the underlying disclosure violations is available only if it is within the one-year statute of limitations. See § 12.2, *supra*.

[25] See the previous note regarding the amount of the statutory damage award. Note that in some circumstances the plaintiff can seek two statutory damage awards: one for the disclosure violations, if that claim is not barred by the one-year statute of limitations, and one for the creditor's failure to respond properly to the consumer's rescission. See § 11.6.4, *supra*. The statute of limitations for rescission violations runs from the date of the violation. See § 12.2.2.5, *supra*.

[26] *See* §10.8.3, *supra. See also* § 10.9, *supra*.

[27] A number of courts have held that a TILA plaintiff must establish detrimental reliance to recover actual damages. In at least some circuits it may be necessary to plead and prove that the plaintiff (1) read the TILA disclosure statement; (2) understood the charges being disclosed; (3) would have sought better terms if the terms had been accurately disclosed; and (4) would have obtained better terms. See §§10.8.2, 11.5.2, *supra*.

       h.  Reasonable costs of this action including reasonable attorney fee.

       i.  Award such other further relief as the Court deems just and proper.

68.    Envision by and through Countrywide failed to issue TILA initial disclosures as mandated. The failure to provide these disclosures would ensure that the Plaintiff had no idea what the loan they were being offered, or the details of the loan. The Plaintiff would then be place in a serious disadvantage as to getting a loan beneficial to their interest.

69.    Envision Lending Group by and through Countrywide, failed to provide Plaintiff with a properly disclosed interest rate and an accurate Good Faith Estimate required under the Code of Federal Regulations. Any and all statute[s] of limitations relating to disclosures and notices required pursuant to 15 U.S.C. §1601, et. seq. were tolled due to Defendants failure to effectively provide the required disclosures and notices.

70.    An actual controversy now exists between Plaintiff, who contends he has the right to rescind the loan on the Subject Property alleged in this Complaint, and based on information and belief, Defendants deny that right.

71.    As a direct and proximate result of Defendants' violations Plaintiff has incurred and continues to incur damages in an amount according to proof but not yet ascertained including without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction.

72.    Defendants were unjustly enriched at the expense of Plaintiff who is therefore entitled to equitable restitution and disgorgement of profits obtained by Defendants.

73.    Defendants actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiff to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

WHEREFORE, Plaintiff pray for relief as set forth below.

COUNT V

Violation of Real Estate Settlement and Procedures Act (RESPA)
(Against All Defendants)

74.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

75.    RESPA applies because a lender that regularly extends federally related mortgage loans aggregating more than $1 million per year, and intended for the purchase of a one- to four-family residential property are subject to RESPA per 12 U.S.C. §§2601-2617.

76.    Housing and Urban Development's (HUD's) 1999 Statement of Policy [Docket No FR-4714-N-01] and RESPA Statement of Policy 2001-1 for clarification of the 1991-1 Statement which established a two-part test for determining the legality of lender payments to mortgage brokers for table funded transactions and intermediary transactions under RESPA:

  a.  Whether goods or facilities were actually furnished or services were actually performed for the compensation paid and;

  b.  Whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.

77.    In applying this test, HUD believes that total compensation should be scrutinized to assure that it is reasonably related to the goods, facilities, or services furnished or performed to determine whether it is legal under RESPA.

78.    The fees for this loan were equally egregious. This loan required the Plaintiff to pay interest rates, fees and/or charges not justified by marketplace economics in place at the time the lien was originated.

79.     Defendants, and each of them, did give, provide or receive a hidden fee or thing of value for the referral of settlement business, including but not limited to, kickbacks, hidden referral fees, and/or yield spread premiums. This is a violation under RESPA of 24 C.FR § 3500.14.

80.     This loan required Envision Lending Group to provide to Plaintiff disclosures of all affiliated business arrangements. There is no evidence this occurred which is a violation per RESPA of 24 C.F.R §3500.15.

81.     This loan required Envision Lending Group to inform Borrower of intention to transfer the servicing of the loan and/or failed to inform the Borrower of the actual transfer within 15 days before the effective date of the transfer. There is no evidence this occurred which is a violation under RESPA of 24 C.FR §3500.21.

82.     There is no evidence that Envision Lending Group provided Borrower with a HUD-1 at closing (or 1 day before if requested). This is a violation under RESPA of 24 C.F.R §3500.B(b).

83.     As a proximate result of Defendants' actions, Plaintiff has been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiff pray for relief as set forth below.

## COUNT VI
### Recission
### (Against All Defendants)

84.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

85.     Plaintiff is entitled to rescind the loan for all of the foregoing reasons: 1) TILA Violations; 2) RESPA; 3) Fraudulent Concealment; 4) Deceptive Acts and Practices (UDAP) and 5) Public Policy Grounds, each of which provides independent grounds for relief.

HANNAH K. HEART V. BANK OF NEW YORK MELON, ET AL.
ORIGINAL COMPLAINT

Borrower can rebut TILA presumption of receiving rescission notice through testimony. *Marr v. Bank of America, N.A.*, 662 F.3d 963 (7th Cir. 2011). Outlook reported in the fourth quarter 2011 issue on the recent case of *Cappuccio v. Prime Capital Funding LLC*, 649 F.3d 180 (3d Cir. 2011), in which the Third Circuit held that a borrower could, through his testimony, overcome the presumption in §1635(c) of TILA that a borrower signing a form acknowledging receipt of disclosures has, in fact, received them. In a new case, the Seventh Circuit reached a similar conclusion. The borrower obtained a refinancing loan. At closing, he was allegedly provided with two copies of the rescission notice and signed a form acknowledging this. However, when the borrower checked his papers several years later, he found only one copy of the rescission notice. The borrower sought to rescind the loan because he received only one copy of the rescission notice, and Regulation Z requires creditors to provide two copies. See §1026.23(b)(1). Plaintiff never received either of the two Forms required under and by this Complaint rebuts the presumption alongside the presumption she received a loan in the first place.

86.    Under the HI Rev Stat. § 490:5-116 and 28 U.S.C. §1367(a).[28] This Court has supplemental jurisdiction to adjudicate this cause in that it arises out of the same credit transaction as the First Cause of Action and is so related to that claim that it forms part of the same case or controversy. The Defendant violated the provisions of 12 C.F.R. §1026.15 in that the Mortgagee failed to give the proper disclosures at closing including the H-1 Right of Recission disclosure. As a result of the violation of §1026.15 the Defendant is civilly liable to the Plaintiff for any actual damages pursuant to 15 U.S.C. §1640(a)(1) as well as twice the amount of any finance charge in connection with the transaction pursuant to 15 U.S.C. §1640(a)(2)(A)(i).

87.    The Truth In Lending Act, 15 U.S.C §1601, et. seq. extends Plaintiff's right to rescind a loan to three years from the date of closing if the borrower received false or incomplete

---

[28] The person is considered to be located at the address indicated in the person's undertaking.

disclosures of either the loans terms or Plaintiff's right to rescind.  Here, Defendants have failed to properly disclose the details of the loan.  Specifically, the initial disclosures do not initial TIL disclosures, and lack of diligence and collusion on the part of the broker, lender and underwriter to place Plaintiffs in a loan he could not afford and would ultimately benefit Defendants following the negative amortization that accrued.

88.    The public interest would be prejudiced by permitting the alleged contract to stand such action would regard an unscrupulous lender.

89.    As a proximate result of Defendants' actions, Plaintiff has been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiff prays for rescission of the stated loan in its entirety.

## COUNT VII
### Unfair and Deceptive Business Act Practices (UDAP)
### (Against all Defendants)

90.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

91.    Defendants failed to undergo a diligent underwriting process for this loan an alleged in this complaint.  They also failed to properly adjust and disclose facts and circumstances relating to Plaintiffs mortgage loan and placed Plaintiff in a loan, by way of stated income and misleading facts, which they should never have been approved for because they could not afford it. Defendants did have that knowledge of these facts. circumstances and risks but failed to disclose them. Defendants also used various rates and charges to disguise the actual payment schedule and loaned amount.  The Defendants enjoyed unjust enrichment and have profited and deceptively preyed upon Plaintiff and their naive nature in the industry.

92.    Further, no disclosures, loan applications, interest rate disclosures, loan

program or questions were discussed or answered in Plaintiffs native language.

93.    Defendant's intentionally concealed business affiliates and rushed the closing to procure the loan without Plaintiff's potential rescission.

94.    By reason of Defendants fraudulent, deceptive, unfair, and other wrongful conduct as herein alleged, said Defendant has violated the Unfair and Deceptive Acts and Practices  by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiff of his home, equity, as well as his past and future investment.

95.    By reason of the foregoing, Plaintiff has suffered and continues to suffer damages in a sum which is, as yet unascertained.

WHEREFORE, Plaintiff pray for relief as set forth below.

## COUNT VIII
### Plaintiff's Claims and Defenses
### (Against all Defendants)

96.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

97.    The contract assumes that the borrower waives certain defenses and claims when in fact it states at 16 C.F.R. 433.2.

16 C.F.R. Part 433.2 states:

*"Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder."*

## COUNT IX
### Breach of Fiduciary Duty
### (Against All Defendants)

98.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

99.    Defendants owed a fiduciary duty to Plaintiff and breached that duty by ailing to advise or notify Plaintiff when Defendant's broker knew or should have known that Plaintiff would or had a likelihood of defaulting on the loan, Defendants have a fiduciary duty to the borrower to not place them in that loan (in harm's way).

100.    Defendants have a fiduciary duty to the Plaintiff, however here, they exercised a greater level of loyalty to each other by providing each other with financial advantages under the loan without disclosing their relation to one another to Plaintiff Defendant failed to provide material disclosures regarding the loan and its interest rate to Plaintiff while in the capacity of Plaintiff's Lender. Defendants failed to fully comply with TILA and RESPA regulations and law designated to protect Plaintiff. The failure to do so placed Plaintiff in a serious disadvantage and potential loss of his home. Such actions are violations of a fiduciary responsibility owed to Plaintiff by Defendants.

WHEREFORE, Plaintiff pray for relief as set forth below.

## COUNT X
### Hawai'i Consumer Protection
### HRS §490:2-302
### (Against All Defendants)

101.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

102.    A violation of the federal laws set forth above is also a violation of the Hawai'i consumer protection statutes, HRS §490:2-302 entitling the Plaintiff to damages according to statute.

103.    If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the

application of any unconscionable clause as to avoid any unconscionable result.

104.    When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

105.    Here, based on the deception, unfair bargaining position, lack of adherence to the regulations, civil codes and federal standards that the Defendants were require to follow; coupled with the windfall that the Defendants reaped financially from their predatory practices upon Plaintiff's, the court may find that the loan agreement and trust deed are unconscionable and of not force or effect.

WHEREFORE, Plaintiff prays for restitution and relief as set forth below.

## COUNT X
### Predatory Lending
### (Against All Defendants)

106.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

107.    The Office of Comptroller of the Currency defines Predatory Lending as any lien secured by real estate which shares well known common characteristics that result in Unfair and Deceptive Business Practices.

108.    Acts undertaken by the Defendants here that are consistent with the Office of the Comptroller's definition include the fact that this loan was marketed in a way which fails to fully disclose all material terms and includes terms and provisions which are unfair, fraudulent or unconscionable; This loan is a practice of offering a loan at one rate and then changing the loan program at the last moment. It can also apply to the negative amortization loan.

109.    This loan does not plainly and prominently disclose on the good faith estimate of closing costs the size of any yield spread premium paid directly or indirectly, in whole or in part,

to a mortgage loan officer.

110.    This loan requires paying interest rates, fees and/or charges not justified by marketplace economics in place at the time the lien was originated.

111.    This loan places borrowers into loans of repeated refinancing that have no tangible benefit to the borrower. Can be the same lender or different ones. Loans and refinances whereby equity is removed from the home through repeated refinances, consolidation of short-term debt into long term debt, negative amortization or interest only loans whereby payments are not reducing principle, high fees and interest rates. Eventually, borrower cannot refinance due to lack of equity.

112.    This loan is a practice whereby mortgage lenders badger homeowners with advertisements and solicitations that tout the "benefits" of consolidating bills into a mortgage loan. The lender fails to inform the borrower that consolidating unsecured debt such as credit cards and medical bills into a mortgage loan secured by the home is a bad idea. If a person defaults on an unsecured debt, they do not lose their home. If a homeowner rolls their unsecured debt into their mortgage loan and default on their mortgage payments, they can lose their home.

WHEREFORE, Plaintiff pray for relief as set forth below.

## COUNT XI
### Quiet Title
### (All Defendants Claiming Any Interest In the Subject Property)

113.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

114.    Plaintiff is at all times herein mentioned the owner and/or entitled to possession of the Property, until the date of sale that transferred physical possession of the deed of trust to the non bonafide subsequent purchaser.

115.    Plaintiff is informed and therefore believes and thereupon alleges that Defendants,

and each of them, claim an interest in the Subject Property adverse to Plaintiff. However, as a result of the conduct more fully described in the preceding allegations, the claim of Defendants is without any right whatsoever, and said Defendants have no legal or equitable right, claim, or interest in the Property.

116.    Plaintiff therefore seek a declaration that the title to the Subject Property is vested in Plaintiffs alone and that the Defendants herein, and each of them, be declared to have no estate, right, title or interest in the Subject Property and that said Defendants, and each of them, be forever enjoined from asserting any estate, right, title or interest in the Subject Property adverse to Plaintiff.

WHEREFORE, Plaintiff pray for relief as set forth below.

## COUNT XII
### Lack of Standing; Improper Fictitious Entity
### (Against Defendant MERS)

117.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

118.    Where a power to sell real property is given to a mortgagee, or other entity whom has placed an encumbrance on title, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded.

119.    Mortgage Electronic Registration System (MERS) has been named the beneficiary for this loan. MERS was created to eliminate the need for the executing and recording of assignment of mortgages, with the idea that MERS would be the mortgagee of record. This would allow MERS to foreclose on the property, and at the same time, assist Countrywide in avoiding the recording of the Assignments of Beneficiary on loans sold. This saved Countrywide money in manpower and the costs of recording these notes. It was also designed to "shield" investors from

liability as a result of lender misconduct regarding the process of mortgage lending.

120.    MERS is simply an "artificial" entity designed to circumvent certain laws and other legal requirements dealing with mortgage loans. By designating certain member employees to be MERS corporate officers, MERS has created a situation whereby the foreclosing agency and MERS "designated officer" has a conflict of interest.

121.    Since neither MERS nor the servicer have a beneficial interest in the note, nor do they receive the income from the payments, and since it is actually an employee of the servicer signing the Assignment in the name of MERS, the Assignment executed by the MERS employee is illegal. The actual owner of the note has not executed the Assignment to the new party. An assignment of a mortgage in the absences of the assignment and physical delivery of the note will result in a nullity.

122.    It must also be noted that the lender or other holder of the note registers the loan on MERS. Thereafter, all sales or assignments of the mortgage loan are accomplished electronically under the MERS system. MERS never acquires actual physical possession of the mortgage note, nor do they acquire any beneficial interest in the Note. The existence of MERS indicated numerous violations of the Unfair and Deceptive Acts and Practices due to the conflicting nature and identity of the servicer and the beneficiary. Each of these practices was intentionally designed to mislead the borrower and benefit the lenders. One can only conclude after a reading of this section, that MERS has no legal standing to foreclose.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands entry of Judgment against Defendant's as follows:

1.  A declaration that Defendants have committed the violations alleged herein;

2. An award of treble damages suffered by Plaintiff plus interest at the legal rate, and attorney's ;fees and expenses pursuant to 18 U.S.C. §1962(c) and (d);

3. An award of Exemplary Damages against all Defendants;

4. An Order to Defendants and each of the persons who realized personal benefit from their transgressions, to disgorge the payments and profits they wrongfully obtained at the expense of the Plaintiff;

5. Declare the security interest in Plaintiff's home void;

6. An Order to Defendants to return of real estate wrongfully obtained at the expense of the Plaintiff;

7. An Order that restitution be made top Plaintiff for Defendants unjust enrichment;

8. An Order that an accounting per TILA and RESPA be made by Defendants of their wrongfully obtained payments and profits;

9. An Injunctive Order preventing Defendants from engaging in future fraudulent practices;

10. An Order reversing the sale of the Subject Property, and an Injunctive Order enjoining Defendant and their agents, successors and assigns of whatsoever kind and wheresoever situated form foreclosing upon the Subject Property before a Final Judgment is obtained.

11. An Order rescinding the Loan and Security Agreement and setting forth terms of restitution including but not limited to; surplus on the sale of the note and Plaintiffs payout of the REMIC.

12. An Order Defendants to take all action necessary to terminate any security interest in Plaintiff's property created under the transaction and that the Court declare all such security interests void, including but not limited to the mortgage related to the transaction of HANNAH KIM HEART;

13. An Order the return to the Plaintiff of any money or property given by the Plaintiff to anyone, including the Defendants, in connection with the transaction;

14. For an Injunction enjoining Defendants as well as any foreclosure proceeding on the Subject Property, during the pendency of this action, and permanently thereafter, from instituting, prosecuting, or maintaining foreclosure proceedings on the Plaintiff's property, from recording any deeds or mortgages regarding the property or from otherwise taking any steps to deprive Plaintiff of ownership of that property;

15. Award the Plaintiff statutory damages for the disclosure violations, in the amount of twice the finance charge in connection with this transaction, but not less than $200 or more than $4,000 as provided under 15 U.S.C. §1640(a);[29]

16. Award the Plaintiff statutory damages for Defendant's failure to respond properly to the Plaintiff's rescission notice, in the amount of twice the finance charge in connection with this transaction, but not less than $400 or more than $4,000 as provided under 15 U.S.C. §1640(a);

17. Order that, because the Defendants failed to respond to the Plaintiff's notice of rescission, the Plaintiff has no duty to tender, but in the alternative, if tender is required, determine the amount of the tender obligation in light of all of the Plaintiff's claims, and order the Defendants to accept tender on reasonable terms and over a reasonable period of time;[30]

18. Quiet Title

19. For Treble Damages in an amount to be determined by the court or through settlement.

20. For Special Damages in an amount to be determined by the court or through settlement

---

[29] Statutory damages will be available for the underlying disclosure violations if the action is brought within the one-year statute of limitations for damages claims. *See* §§ 10.9.4, 12.2.2.2, *supra.*

[30] *See* § 10.9.5.2, *supra,* for a discussion of the relatively rare circumstances in which courts have held that the creditor has forfeited the right to the consumer's tender. Assuming that tender will be required, it is important, particularly in the Ninth Circuit because of the ruling in Yamamoto v. Bank of New York, 329 F.3d 1167 (9th Cir. 2003), to indicate a willingness to tender and to ask the court to determine the amount and manner of tendering. The consumer should be prepared to submit specific proposals for the manner of making tender in response to a summary judgment motion from the lender. *See* § 10.7.3, *supra.* Some courts require the consumer to plead ability to tender specifically. *See* § 10.7.5, *supra.*

21. For General Damages in an amount to be determined by the court or through settlement

22. For Punitive Damages in an amount to be determined by the court or through settlement

23. As to All Counts, cost of suit herein;

24. As to all Counts, reasonable attorney's fees; and;

25. Award such other and further relief as the Court deems just and proper.

## RIGHT TO AMEND

Plaintiff reserves her consumer and other commercial rights under HRS §480:1-308 and her right to amend this Complaint, asserting other facts, counts and causes of action after further investigation and discovery.

## RATIFICATION PLAINTIFF

I am **HANNAH K. HEART**, plaintiff herein. This Complaint is being submitted for the limited purpose of establishing probable cause. Plaintiff has not included each fact known to her concerning this investigation. Rather, plaintiff has set forth only those facts that she is with strong belief are sufficient to establish the aforementioned causes of actions.

I **HANNAH K. HEART** declare under penalty of perjury that the foregoing is true and correct. Executed on this April 4, 2023 by HANNAH K. HEART.[31]

Respectfully Submitted.

/s/ *Hannah Heart*
Hannah K. Heart
5339 Poola St.
Honolulu, HI 96821
(808)780-6836
hannahheartinhawaii@yahoo.com

---

[31] *Dickinson v. Wainwright*, 626 F.2d 1184 (5th Cir. 1980), instruments sworn true and correct under penalty of perjury have full force of law. See, also Section 1746 of Title 28, 28 U.S.C.A. §2746

HANNAH K. HEART V. BANK OF NEW YORK MELON, ET AL.
ORIGINAL COMPLAINT