UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| HANNAH K. HEART,<br><br>              Plaintiff,<br><br>     vs.<br><br>THE BANK OF NEW YORK MELLON,<br>BANK OF AMERICA, SELECT<br>PORTFOLIO SERVICE, SHELLPOINT<br>MORTGAGE SERVICING, MR. COOPER,<br>MORTGAGE ELECTRONIC REGISTRATION<br>SYSTEMS, INC.,  DOES 1-100,<br>INCLUSIVE,<br><br>              Defendants. | CIV. NO. 23-00158 LEK-WRP |

**ORDER DISMISSING PLAINTIFF'S AMENDED COMPLAINT,
[FILED 3/25/24 (DKT. NO. 35),] WITH LIMITED LEAVE TO AMEND**

The operative pleading in this case is pro se

Plaintiff Hannah K. Heart's ("Heart" or "Plaintiff") "First

Amended Complaint for: Declaratory Relief, Injunction Relief,

Fair Dealings, Violation of TILA, Violation of RESPA, Recission,

Violation of UDAP, Claims and Defenses, Breach of Fiduciary

Duty, Hawaii Consumer Protection, Predatory Lending and

Unconscionability, Quiet Title, Lack of Standing" ("Amended

Complaint"), filed on March 25, 2024. [Dkt. no. 35.] Before this

Court are:

-Defendant Select Portfolio Servicing, Inc.'s ("SPS") motion to
    dismiss the Amended Complaint, filed on June 25, 2024 ("SPS
    Motion"); [dkt. no. 64;]

-the substantive joinder in the SPS Motion filed on June 28,
     2024 by Defendants The Bank of New York Mellon, formerly
     known as The Bank of New York, as Trustee for the
     Certificate Holders of CWALT, Inc., Alternative Loan Trust
     2006-OA21 Mortgage Pass-Through Certificates, Series 2006-
     OA21 ("BONYM"); NewRez LLC doing business as Shellpoint
     Mortgage Servicing ("Shellpoint"); and Mortgage Electronic
     Registration Systems, Inc. ("MERS" and collectively "BONYM
     Defendants" and "BONYM Defendants' SPS Joinder"); [dkt.
     no. 68];

-Defendant Bank of America, N.A./Bank of America Corporation's
     ("BANA") motion to dismiss the Amended Complaint, filed on
     July 10, 2024 ("BANA Motion"); [dkt. no. 69;]

-SPS's joinder of simple agreement in the BANA Motion, filed on
     July 11, 2024 ("SPS BANA Joinder"); [dkt. no. 70;]

-the BONYM Defendants' joinder of simple agreement in the BANA
     Motion, filed on July 11, 2024 ("BONYM Defendants' BANA
     Joinder"); [dkt. no. 71;] and

-the motion to dismiss the Amended Complaint filed on July 15,
     2024 by Defendant Nationstar Mortgage LLC, doing business
     as Mr. Cooper, erroneously sued as Mr. Cooper ("Nationstar"
     and "Nationstar Motion"), [dkt. no. 72].

     Heart's response to the SPS Motion was due on July 9,

2024. See Minute Order, filed 6/25/24 (dkt. no. 65). Heart

neither filed a response the SPS Motion nor did Heart request an

extension of the deadline to do so. In fact, Heart has not filed

any document since the filing of the SPS Motion. Heart's failure

to respond to the SPS Motion is construed as a concession of the

issues raised in the SPS Motion.

     This Court previously took the SPS Motion and the

BONYM Defendants' SPS Joinder under advisement but stated that

it was not necessary for Heart to respond to the other motions

and joinders until this Court ruled on the SPS Motion and the
BONYM Defendants' SPS Joinder. <u>See</u> Minute Order – EO: Court
Order Regarding the Motions to Dismiss and Joinders, filed
7/22/24 (dkt. no. 73), at PageID.1031. However, based on Heart's
failure to respond to the SPS Motion and because the analysis of
the issues raised in the SPS Motion and the BONYM Defendants'
SPS Joinder also applies to the other motions and joinders, this
Court finds that briefing on the BANA Motion, the joinders in
the BANA Motion, and the Nationstar Motion is not necessary.

The Court finds all of the motions and joinders
suitable for disposition without a hearing pursuant to
Rule LR7.1(c) of the Local Rules of Practice for the United
States District Court for the District of Hawaii ("Local
Rules"). For the reasons set forth below, Heart's Amended
Complaint is dismissed in its entirety. The dismissal is without
prejudice to Heart's filing of a second amended complaint
against Nationstar asserting only the claims identified in this
Order. The dismissal is with prejudice as to Heart's other
claims against Nationstar and as to all of Heart's claims
against SPS, BONYM, Shellpoint, MERS, and BANA.

**BACKGROUND**

I.   <u>**Amended Complaint**</u>

According to the Amended Complaint, on December 20,
2005, Heart "entered into a consumer credit transaction . . .

3

with First Magnus Financial Corporation" ("First Magnus"), but
First Magnus sold the transaction to another one of the
defendants, which Heart does not identify. [Amended Complaint at
pg. 6.] Heart denies receiving this loan, denies committing any
default in connection with this loan, and denies owing any debt
to the defendants associated with this loan. See id. The
transaction included a mortgage in favor of First Magnus
securing a $1,000,00 promissory note, and Heart received a Truth
in Lending disclosure statement in conjunction with the loan.
[Id. at pg. 7.] Heart asserts "[t]he security interest was not
created to finance the acquisition of [Heart's] home." [Id.]

Heart makes similar allegations regarding an
October 26, 2005 home equity line of credit consumer credit
transaction with Mortgage Connections Inc. ("Mortgage
Connections") that was to close simultaneously with the First
Magnus transaction. [Id. at pgs. 7-9.] Heart also makes similar
allegations regarding a December 1, 2006 consumer credit
transaction with Countrywide Bank, N.A. ("Countrywide") that was
to be a refinancing of the First Magnus and Mortgage Connections
transactions.[1] Heart alleges that loan was originated by Envision

---

[1] Heart alleges Countrywide is now known as Bank of America.
See Amended Complaint at pg. 13.

4

Lending Group ("Envision"),[2] and it was a usurious loan. [Id. at pgs. 9-10.] According to Heart, Envision acted as the mortgage broker. [Id. at pg. 13.]

In addition, the Amended Complaint alleges that, on October 26, 2005, Heart entered into a loan repayment and security agreement with Countrywide, and that loan was refinanced in 2006 by Envision. [Id. at pg. 13.] According to the Amended Complaint, the security for that loan was sold to Countrywide without Heart's consent, and the loan was subsequently transferred or assigned to SPS on July 21, 2011, then to an entity Heart refers to as "Bayview" on December 5, 2014, and to Shellpoint in February 2019. [Id.]

Heart alleges the property at issue in this case is located at 5339 Poola Street, Honolulu, Hawai`i 96821 ("the Subject Property"), [id. at pg. 3,] and each of the defendants "claim[s] some right, title, estate, lien, or interest in the Subject Property adverse to Plaintiff's title," [id. at pg. 4]. Heart acknowledges that one or more of the defendants foreclosed on the Subject Property, but Heart alleges the "[d]efendants'

---

[2] Envision was named as one of the defendants in Heart's original Complaint. See Complaint, filed 4/5/23 (dkt. no. 1), at pg. 4 (identifying Envision among the defendants). However, Envision is not named as a defendant in the Amended Complaint. See Amended Complaint at pgs. 3-5 (identifying the parties).

security interest in the Subject Property has been rendered void by operation of law . . . ." See id. at pg. 20.

Heart asserts the following claims: a claim for declaratory relief against all defendants ("Count I"); a claim for injunctive relief against all defendants ("Count II"); a breach of the implied covenant of good faith and fair dealing against all defendants ("Count III"); a claim against all defendants for violations of the Truth-in-Lending Act ("TILA"), Title 15 United States Code Section 1601, et seq. ("Count IV"); a claim against all defendants for violations of the Real Estate Settlement and Procedures Act ("RESPA"), Title 12 United States Code Section 2601, et seq., and Title 24 Code of Federal Regulations Sections 3500.14, 3500.15, 3500.21, and 3500.B(b) ("Count V"); a recission claim against all defendants ("Count VI"); an unfair and deceptive acts and practices ("UDAP") claim against all defendants ("Count VII"); a count alleging "all claims and defenses," pursuant to Title 16 Code of Federal Regulations Section 433.2, against all defendants ("Count VIII"); a breach of fiduciary duty claim against all defendants ("Count IX"); a claim against all defendants for violations of the Hawai`i consumer protection statute, Hawai`i Revised Statutes Section 490:2-302 ("Count X"); a predatory lending and unconscionability claim against all defendants ("Count XI"); a quiet title claim against any defendant claiming

an interest in the Subject Property ("Count XII"); and a lack of standing claim against BONYM and MERS ("Count XIII"). [Id. at pgs. 20-44.]

## II.   **The SPS Motion and the BONYM Defendants' SPS Joinder**

SPS argues all of the claims in Heart's Amended Complaint are barred because of the res judicata and collateral estoppel effect of the final judgment issued by the State of Hawai`i Circuit Court of the First Circuit ("state court") in BONYM's foreclosure action. [SPS Motion at 1.] In addition, Heart's claims are barred by the Rooker-Feldman doctrine.[3] [Id.[4]]

The BONYM Defendants join in and adopt the arguments in the SPS Motion, except SPS's argument as to privity. [BONYM Defs.' SPS Joinder at 2-3.] SPS asserts:

> It cannot be contested that [BONYM] is the
> plaintiff lender and mortgagee in the State
> Action and that [BONYM] is the lender and
> mortgagee in this action. It also cannot be
> contested that SPS and the other Defendants named
> in this action were [BONYM]'s loan servicers and
> were therefore in privity with [BONYM].

---

[3] The Rooker-Feldman doctrine was established by the United States Supreme Court in Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

[4] SPS also argues Heart's request for an injunction against the completion of the foreclosure proceeding is barred by the Anti-Injunction Act. [SPS Motion at 1.] Because this Order disposes of all of the claims against SPS and the BONYM Defendants on other grounds, this Court does not address the Anti-Injunction Act argument.

[SPS Motion, Mem. in Supp. at 14 (citation omitted).] The BONYM
Defendants agree that BANA, MERS, SPS, and Shellpoint were in
privity with BONYM, but they assert a different basis for MERS's
privity with BONYM, and they argue it is unclear whether
Mr. Cooper, formerly known as Bayview Loan Servicing, which has
appeared in this case as Nationstar, was in privity with BONYM.
See BONYM Defs.' SPS Joinder at 3-4 & n.1. Ultimately, the BONYM
Defendants agree with SPS that Heart's claims should be
dismissed in their entirety. See id. at 4.

## DISCUSSION

### I. *Rooker-Feldman* Doctrine

        This Court turns first to SPS's argument that Heart's
claims are barred under the Rooker-Feldman doctrine. SPS
contends that this Court lacks jurisdiction over Heart's claims
because all of them would require this Court to second guess the
decisions in the state court foreclosure action. [SPS Motion,
Mem. in Supp. at 16-18.] SPS's Rooker-Feldman argument presents
a challenge to this Court's jurisdiction pursuant to Federal
Rule of Civil Procedure 12(b)(1). Accord Levitz v. PNC Bank
Nat'l Ass'n, Case No. 24-cv-00024-DKW-KJM, 2024 WL 5136685, at
*2 (D. Hawai`i Dec. 17, 2024).

            When presented with an argument under
        Rule 12(b)(1), "the district court is ordinarily
        free to hear evidence regarding jurisdiction and
        to rule on that issue prior to trial, resolving
        factual disputes where necessary." Augustine v.

> United States, 704 F.2d 1074, 1077 (9th Cir.
> 1983). Where the court considers evidence outside
> the pleadings for this purpose, "[n]o presumptive
> truthfulness attaches to plaintiff's allegations,
> and the existence of disputed material facts will
> not preclude the trial court from evaluating for
> itself the merits of jurisdictional claims." Id.

Id. This Court will therefore consider the exhibits that are

attached to the SPS Motion and the BONYM Defendants' SPS

Joinder.

On December 16, 2013, in the state court, BONYM filed

a Verified Complaint for Foreclosure regarding the Subject

Property against Heart and others in The Bank of New York Mellon

v. Hannah Kim Heart et al., Civil No. 13-1-3271-12 ("Foreclosure

Complaint" and "Foreclosure Action"). See SPS Motion,

Declaration of Patricia J. McHenry ("McHenry Decl."), Exh. 1

(Foreclosure Complaint). On October 19, 2021, the state court

issued its Findings of Fact; Conclusions of Law; Order Granting

Plaintiff's Motion for Summary Judgment, and for Interlocutory

Decree of Foreclosure Against All Parties Filed November 21,

2019 ("10/19/21 FOF-COL"). See McHenry Decl., Exh. 6 (10/19/21

FOF-COL). The state court found, inter alia, that:

-Heart and Hannah Kim Heart, Trustee Under an Unrecorded
    Revocable Living Trust Instrument of Hannah K. Heart Dated
    June 1, 2006 ("Heart as Trustee") executed an Adjustable
    Rate Payoption Note dated December 1, 2006 to Countrywide
    for the amount of $1,166,250.00 ("Note"); [id. at 2, ¶ 1;]

-Heart/Heart as Trustee executed a mortgage dated December 1,
    2006 securing the amount of the Note, and other

9

indebtedness, in favor of MERS as Countrywide's nominee ("Mortgage"); [id. at 3, ¶ 2;]

-the Mortgage encumbers the Subject Property; [id. at 3, ¶ 3;]

-at the time BONYM commenced the Foreclosure Action, SPS had possession of the endorsed Note, and BONYM was the assignee of the Mortgage; [id. at 3, ¶ 4;]

-Heart/Heart as Trustee defaulted and the Note and Mortgage and failed to cure the defaults; [id. at 3, ¶ 5;]

-under the terms of the Note and Mortgage, a total of $1,794,309.09 was due to BONYM as of July 30, 2019, plus per diem interest of $199.23 after July 30, 2019 until the closing of the foreclosure sale; [id. at 3-4, ¶ 6;] and

-BONYM had standing to purse the Foreclosure Action, [id. at 4, ¶ 8].

The state court concluded that BONYM was entitled to have the Mortgage foreclosed upon and the Subject Property sold. [Id. at 5, ¶ 6.] The state court directed that an Interlocutory Decree of Foreclosure be entered as a final judgment on the Foreclosure Complaint, ruling that "there [was] no just reason for delay in  entry of the Interlocutory Decree of Foreclosure and summary judgment as a final judgment." [Id. at 5-6, ¶ 1.A.] The state court also authorized the Subject Property to be sold at a public auction and appointed a commissioner to carry out the sale. [Id. at 6, ¶¶ C-D.]

On October 19, 2021, a Judgment was entered pursuant to the 10/19/21 FOF-COL ("Foreclosure Judgment"). See McHenry Decl., Exh. 7 (Foreclosure Judgment). Pursuant to Hawai`i Rule of Appellate Procedure 4(a)(3), Heart/Heart as Trustee had

thirty days to appeal the Foreclosure Judgment, but no appeal was taken. See McHenry Decl., Exh. 2 (docket, dated 6/17/24, for the Foreclosure Action ("Foreclosure Action Docket")) at 32-33 (reflecting filings during the thirty days following the filing of the Foreclosure Judgment).

On May 10, 2022, the state court approved and filed a stipulation between BONYM and Heart/Heart as Trustee to vacate the 10/19/21 FOF-COL, vacate the Foreclosure Judgment, dismiss with prejudice all claims and all parties in the Foreclosure Action, and release the notice of pendency of action ("5/10/22 Stipulation and Order"). See id., Exh. 8 (5/10/22 Stipulation and Order). However, on October 18, 2022, BONYM filed a motion to set aside the 5/10/22 Stipulation and Order ("Motion to Set Aside"). See id., Exh. 9 (Motion to Set Aside).

BONYM's Motion to Set Aside was granted in part and denied in part. See id., Exh. 10 (order ruling on the Motion to Set Aside, filed on 2/7/23 ("2/7/23 Order")). The state court set aside the 5/10/22 Stipulation and Order (thereby reinstating the vacated Foreclosure Judgment), reinstated the Foreclosure Action, and allowed BONYM to proceed with the auction of the Subject Property.[5] See id. at 5. The Motion to Set Aside was

---

[5] The state court found that the parties stopped the foreclosure action after Heart tendered to Shellpoint a payment draft in an amount that was sufficient to satisfy the

(. . . continued)

denied to the extent that it sought to reinstate the claims in
the Foreclosure Action against named defendants that had not
appeared. See id. at 7. No appeal was filed within thirty days
after the filing of the 2/7/23 Order. See McHenry Decl., Exh. 2
(Foreclosure Action Docket) at 44-45 (docket reflecting filings
during the thirty days following the filing of the 2/7/23
Order).

On March 29, 2023, BONYM filed a motion to confirm the
foreclosure sale ("Confirmation Motion"). See id. at dkt.
no. 253. The state court held a hearing on the Confirmation
Motion on June 7, 2023 and granted the motion. See id. at dkt.
no. 294 (Minutes). Heart filed a notice of appeal on June 13,
2024. See id. at dkt. no. 297; see also McHenry Decl., Exh. 11
(docket, dated 6/20/24, for Bank of New York Mellon v. Heart, et
al. before the Intermediate Court of Appeals ("ICA" and
"Confirmation Appeal")). According to the current docket sheet
for the Confirmation Appeal, Heart's appeal is still pending.

This district court has stated:

> The Ninth Circuit Court of Appeals has described
> the Rooker-Feldman doctrine as follows:

---

outstanding debt. The 5/10/22 Stipulation and Order was filed
based on the assumption that the payment draft was valid. See
McHenry Decl., Exh. 10 (2/7/23 Order) at 2-3. However, when
BONYM attempted to deposit the payment draft, it "was returned
as being 'Altered Fictious.'" See id. at 3. The Motion to Set
Aside sought to set aside the 5/10/22 Stipulation and Order
"based upon mistake excusable neglect, fraud, or in the interest
of justice." See id.

> Rooker-Feldman is a powerful doctrine that
> prevents federal courts from second-guessing
> state court decisions by barring the lower
> federal courts from hearing de facto appeals
> from state-court judgments: If claims raised
> in the federal court action are
> 'inextricably intertwined' with the state
> court's decision such that the adjudication
> of the federal claims would undercut the
> state ruling or require the district court
> to interpret the application of state laws
> or procedural rules, then the federal
> complaint must be dismissed for lack of
> subject matter jurisdiction.

Bianchi v. Rylaarsdam, 334 F.3d 895, 898 (9th
Cir. 2003). "Essentially, the doctrine bars
state-court losers complaining of injuries caused
by state-court judgments rendered before the
district court proceedings commenced from asking
district courts to review and reject those
judgments." Henrichs v. Valley View Dev., 474
F.3d 609, 613 (9th Cir. 2007) (quotation
omitted). However, "[p]reclusion, not Rooker-
Feldman, applies when a federal plaintiff
complains of an injury that was not caused by the
state court, but which the state court has
previously failed to rectify." Id. at 614
(quotation and internal quotation omitted).

Levitz, 2024 WL 5136685, at *3-4 (alteration in Levitz).

> "Proceedings end for Rooker-Feldman purposes when
> the state courts finally resolve the issue that
> the federal court plaintiff seeks to relitigate
> in a federal forum, even if other issues remain
> pending at the state level." Mothershed [v.
> Justs. of Sup. Ct.], 410 F.3d [602,] 604 n.1
> [(9th Cir.), amended on denial of reh'g, 2005 WL
> 1692466 (9th Cir. July 21, 2005)]. In addition,
> courts "pay close attention to the **relief** sought
> by the federal-court plaintiff" in determining
> whether his action functions as a de facto
> appeal. Hooper v. Brnovich, 56 F.4th 619, 624
> (9th Cir. 2022) (quoting Cooper v. Ramos, 704
> F.3d 772, 777-78 (9th Cir. 2012)).

Plotkins v. Cnty. of Kaua`i, Fin. Div. Real Prop. Assessment,
CIV. NO. 24-00019 JMS-KJM, 2024 WL 1885791, at *2 (D. Hawai`i
Apr. 30, 2024). Although the foreclosure sale and confirmation
proceedings occurred after the Foreclosure Judgment was
reinstated and the appeal of the confirmation proceedings is
still pending, the Foreclosure Judgment "is 'effectively final'
for purposes of Rooker-Feldman." See id. at *4 (quoting Malhan
v. Sec'y United States Dep't of State, 938 F.3d 453, 459 (3d
Cir. 2019)); see also Beneficial Hawai`i, Inc. v. Casey, 98
Hawai`i 159, 165, 45 P.3d 359, 365 (2002) ("[F]oreclosure cases
are bifurcated into two separately appealable parts: (1) the
decree of foreclosure and the order of sale, if the order of
sale is incorporated within the decree; and (2) all other
orders." (citations and quotation marks omitted)). Thus, the
Foreclosure Judgment is a final judgment for purposes of the
Rooker-Feldman analysis, and Heart's claims that ask this Court
to review and reject the Foreclosure Judgment, or the 10/19/21
FOF-COL that the Foreclosure Judgment is based upon, are barred
under Rooker-Feldman.

Count I seeks a declaratory judgment that the
"[d]efendants did not have the right to foreclose on the Subject
Property," [Amended Complaint at pg. 20,] and Count II seeks to
enjoin the Foreclosure Action and the nonjudicial sale of the

14

Subject Property ordered in the Foreclosure Action, see id. at
pgs. 21-22. Count VI seeks recission of the loan evidenced by
the Note and Mortgage. See id. at pgs. 32-33. Count X alleges
that the agreements associated with the loan at issue in the
Foreclosure Action are unenforceable because they are
unconscionable. See id. at pgs. 36-37. Count XII, Heart's quiet
title claim, seeks a ruling that Heart still holds the title to
the Subject Property and that none of the defendants have any
right to the Subject Property, [id. at pgs. 38-39,] and Count
XIII seeks a ruling that BONYM did not have standing to pursue
the Foreclosure Action, see id. at pgs. 42-43. Counts I, II, VI,
X, XII, and XIII clearly ask this Court to review and reject the
Foreclosure Judgment and the state court's decisions in 10/19/21
FOF-COL that is the basis of the Foreclosure Judgment.

Counts I, II, VI, X, XII, and XIII present a de facto
appeal of the Foreclosure Action because Heart essentially
asserts the state court made an erroneous decision when it ruled
that BONYM was entitled to foreclose on the Subject Property,
and Heart seeks relief from that decision in the instant case.
See Bell v. City of Boise, 709 F.3d 890, 897 (9th Cir. 2013) ("A
de facto appeal exists when a federal plaintiff asserts as a
legal wrong an allegedly erroneous decision by a state court,
and seeks relief from a state court judgment based on that
decision." (citation and internal quotation marks omitted)).

Under the Rooker-Feldman doctrine, this Court lacks subject matter jurisdiction over Counts I, II, VI, X, XII, and XIII, see id., and those claims are therefore dismissed as to all of the defendants named in those counts.

This Court must permit a pro se plaintiff to amend a dismissed complaint if it appears that the plaintiff can cure the defects. See Plotkins, 2024 WL 1885791, at *2 (citing Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000)). However, "if a claim or complaint cannot be saved by amendment, dismissal with prejudice is appropriate." Id. (citing Sylvia Landfield Tr. v. City of L.A., 729 F.3d 1189, 1196 (9th Cir. 2013)). In this case, allowing Heart to amend Counts I, II, VI, X, XII, and XIII would be futile because Heart cannot avoid the effect of the Rooker-Feldman doctrine by amending those claims. See id. at *4 (citing Obeng-Amponsah v. Naiman, 677 F. App'x 425 (9th Cir. 2017) (affirming dismissal without leave to amend of foreclosure-related claims under Rooker-Feldman doctrine "because the jurisdictional defect could not be cured by amendment")). Therefore, the dismissal of Counts I, II, VI, X, XII, and XIII is with prejudice.

## II.   **Res Judicata**

SPS also bring a Federal Rule of Civil Procedure 12(b)(6) challenge to Heart's claims on the ground that they are barred by res judicata. See SPS Motion, Mem. in

Supp. at 9-14. The BONYM Defendants join in this argument. <u>See</u>
BONYM Defs.' SPS Joinder at 2.

A.    <u>**Preliminary Issues**</u>

"[A]lthough res judicata is, ordinarily, an
affirmative defense to be raised in a responsive pleading,
rather than a motion to dismiss, the Ninth Circuit has explained
that this is 'not true when, as here, the defense raises no
disputed issues of fact.'" <u>Levitz</u>, 2024 WL 5136685, at *4 n.5
(quoting <u>Scott v. Kuhlmann</u>, 746 F.2d 1377, 1378 (9th Cir.
1984)). In <u>Levitz</u>, the district court considered the defendant's
res judicata argument raised in a Rule 12(b)(6) motion to
dismiss because the plaintiff did "not oppose[] the motion to
dismiss or otherwise dispute[] any of the facts set forth
therein or the accuracy of the exhibits attached thereto." <u>Id.</u>
Similarly, in the instant case, Heart has not opposed either the
SPS Motion or the BONYM Defendants' SPS Joinder, nor has Heart
disputed the accuracy of the exhibits attached to the motion and
joinder. This Court will therefore consider the res judicata
argument here.

This Court first notes that, as a general rule, when
it considers a motion to dismiss brought pursuant to
Rule 12(b)(6), it can only consider material beyond the
complaint if the material is incorporated by reference in the
complaint or if the material is subject to judicial notice. <u>See</u>

Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th

Cir. 2018).

>    Judicial notice under Rule 201 permits a
>    court to notice an adjudicative fact if it is
>    "not subject to reasonable dispute." Fed. R.
>    Evid. 201(b). A fact is "not subject to
>    reasonable dispute" if it is "generally known,"
>    or "can be accurately and readily determined from
>    sources whose accuracy cannot reasonably be
>    questioned." Fed. R. Evid. 201(b)(1)–(2).
>
>    Accordingly, "[a] court may take judicial
>    notice of matters of public record without
>    converting a motion to dismiss into a motion for
>    summary judgment." Lee [v. City of Los Angeles],
>    250 F.3d [668,] 689 [(9th Cir. 2001)] (quotation
>    marks and citation omitted).[6] But a court cannot
>    take judicial notice of disputed facts contained
>    in such public records. Id.

Id. at 999 (some alterations in Khoja). Public records that a

district court can take judicial notice of include "documents

filed with courts, 'both within and without the federal judicial

system, if those proceedings have a direct relation to the

matters at issue.'" Bartolotti v. Maui Mem'l Med. Ctr., Civil

No. 14-00549 SOM/KSC, 2015 WL 4545818, at *3 (D. Hawai`i

July 28, 2015) (quoting United States v. Borneo, Inc., 971 F.2d

244, 248 (9th Cir. 1992)). This Court therefore takes judicial

---

    6 Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125–26
(9th Cir. 2002), overruled Lee on grounds not relevant to the
issues presented in the instant Motion. See, e.g., Cortez v.
Klique Car Club, Inc., Case No. 2:23-cv-07210-MEMF-MAA, 2024 WL
988374, at *1 (C.D. Cal. Mar. 6, 2024). Galbraith was abrogated
on other grounds by Bell Atlantic Corp. v. Twombly, 550 U.S. 544
(2007). See, e.g., Higa v. Kobayashi, CIV. NO. 19-00664 LEK-WRP,
2020 WL 2027290, at *4 (D. Hawai`i Apr. 27, 2020).

notice of the exhibits attached to the SPS Motion and the BONYM
Defendants' SPS Joinder, which are all filings from the
Foreclosure Action. However, this Court does not take judicial
notice of any disputed facts within those exhibits.

### B. Requirements for the Application of Res Judicata

Generally, res judicata precludes the litigation
of claims or defenses that were or could have
been litigated in a prior lawsuit. When the prior
lawsuit is a State one, like here, "the federal
court must look to the res judicata principles of
the state court in which the judgment was
rendered." Pedrina v. Chun, 97 F.3d 1296, 1301
(9th Cir. 1996). In Hawai`i, res judicata (or, as
it is also known, claim preclusion) "precludes
not only the relitigation of claims or defenses
that were litigated in a previous lawsuit, but
also of all claims and defenses that might have
been properly litigated, but were not litigated
or decided." Eastern Savings Bank, FSB v.
Esteban, 296 P.3d 1062, 1067 (Haw. 2013)
(quotation omitted). Ultimately –

the party asserting claim preclusion has the
burden of establishing that (1) there was a
final judgment on the merits, (2) both
parties are the same or in privity with the
parties in the original suit, and (3) the
claim presented in the action in question is
identical to the one decided in the original
suit, or to a claim or defense that might
have been properly litigated in the first
action but was not litigated or decided.

Id. at 1068.

Levitz, 2024 WL 5136685, at *4–5.

### 1. Final Judgment on the Merits

No appeal was filed after the entry of the Foreclosure
Judgment nor after the filing of the 2/7/23 Order, which

reinstated the Foreclosure Judgment. The Foreclosure Judgment
was entered pursuant to the 10/19/21 FOF-COL, which ruled on the
merits of the Foreclosure Action. Because of the bifurcated
nature of foreclosure proceedings under Hawai`i law, see
Beneficial Hawai`i, 98 Hawai`i at 165, 45 P.3d at 365, the
reinstated Foreclosure Judgment is a final judgment on the
merits for purposes of the res judicata/claim preclusion
analysis.

### 2.    Identical Parties or Parties in Privity

Heart and BONYM were parties in the Foreclosure
Action. Heart executed the Note in favor of Countywide, which is
now known as BANA. See Amended Complaint at pgs. 9, 13; see also
McHenry Decl., Exh. 1 (Foreclosure Complaint) at Exh. A (Note).
Heart executed the Mortgage in favor of MERS as the nominee for
Countrywide and Countrywide's successors and assigns. See
McHenry Decl., Exh. 1 (Foreclosure Complaint) at Exh. B
(Mortgage). The Mortgage was subsequently assigned to BONYM. See
id. at Exh. C (Assignment of Mortgage). This Court therefore
finds that BANA, MERS, and BONYM are in privity for purposes of
the res judicata/claim preclusion analysis.

The loan at issue in the Foreclosure Action "was
transferred/assigned to Select Portfolio Service on July 21,
2011, then to Bayview December 5, 2014 and finally to NewRez dba
Shellpoint in February of 2019." See Amended Complaint at

pg. 13. For purposes of the Rule 12(b)(6) analysis, these factual allegations in the Amended Complaint are assumed to be true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true" (citation omitted)). Thus, this Court also finds that BANA, SPS, and Shellpoint are in privity for purposes of the res judicata/claim preclusion analysis.[7]

### 3. **Identical Claims**

The claims discussed above in the Rooker-Feldman analysis are identical to the claims that were litigated in the Foreclosure Action because they all address the issues of whether the Note and Mortgage were enforceable, whether there was a breach of the Note and/or Mortgage, and what the status is of the title to the Subject Property. This Court therefore concludes that Counts I, II, VI, X, XII, and XIII are also barred by the res judicata doctrine as to BONYM and the defendants that are in privity with BONYM.

---

[7] Heart alleges Mr. Cooper, referred to here as Nationstar, "is a mortgage servicing company." See Amended Complaint at pg. 3. However, there are no other factual allegations in the Amended Complaint about Nationstar's role in or connection to the events at issue in this case. Therefore, there is insufficient information for this Court to determine whether Nationstar is in privity with the other defendants for purposes of the res judicata/claim preclusion analysis.

Count IV, Heart's TILA claim, alleges: that
Countrywide failed to disclose certain fees associated with the
loan and the manner in which the finance charges for the loan
were calculated; and that subsequent defendants continued to
collect the improper finance charges. See Amended Complaint at
pgs. 24-30. Heart's TILA claim could have been litigated in the
Foreclosure Action "because, at the very least, the alleged
conduct arose out of the same transaction or series of
transactions as [BONYM]'s lawsuit to enforce the mortgage and
foreclose on the Property." See Levitz, 2024 WL 5136685, at *6
(citing Eastern Savings Bank, 296 P.3d at 1069 (concluding that
claims under the TILA could have been raised in a foreclosure
case as a counterclaim or affirmative defense, and citing
Pacific Concrete Fed. Credit Union v. Kauanoe, 614 P.2d 936, 940
(Haw. 1980), for the proposition that alleged TILA disclosure
violations "arose out of the same transaction" as a suit for
enforcement of the underlying loan)). This Court therefore
concludes that Count IV is barred by the res judicata doctrine
as to BONYM and the defendants that are in privity with BONYM.

Count III alleges the defendants breached the covenant
of good faith and fair dealing that is implied in all of the
contracts associated with Heart's loan. Heart alleges: the
defendants breached the implied covenant by, *inter alia*, failing
to provide certain notices and disclosures, including

22

disclosures regarding the applicable interest rates; and the breaches resulted in the loss of the Subject Property in the Foreclosure Action. See Amended Complaint at pgs. 22-24. As with Heart's TILA claim, Heart's good faith and fair dealing claim arises out of the same transaction or series of transactions that the Foreclosure Action arose out of, and therefore the claim could have been litigated in the Foreclosure Action. Count III is barred by the res judicata doctrine as to BONYM and the defendants that are in privity with BONYM.

Count V, Heart's RESPA claim, primarily alleges Envision violated RESPA by failing to provide Heart with certain disclosures and notice. See id. at pg. 31, ¶¶ 7-9. However, as previously noted, Envision is not named as a defendant in the Amended Complaint. To the extent that Heart intends to assert RESPA claims (or any other claims) against Envision, those claims are not before this Court. As to the other defendants, Heart alleges they violated RESPA by including various hidden fees in the loan. See id. at pg. 31, ¶ 6. Heart's RESPA claim arises out of the same transaction or series of transactions that the Foreclosure Action arose out of, and therefore the claim could have been litigated in the Foreclosure Action. Count V is barred by the res judicata doctrine as to BONYM and the defendants that are in privity with BONYM.

Count VII, Heart's UDAP claim, alleges the defendants failed to make necessary disclosures and placed Heart in a loan that Heart could not afford. See id. at pg. 34. Count IX, Heart's breach of fiduciary duty claim, alleges the defendants breached their fiduciary duties by placing Heart in a loan that Heart could not afford, by failing to provide various disclosures to Heart, and by failing to comply with TILA and RESPA. See id. at pgs. 35-36. Count XI, Heart's predatory lending and unconscionability claim, alleges the defendants failed to disclose terms and conditions of the loan, including the loan's interest rate and fees. See id. at pgs. 37-38. Counts VII, IX, and XI arise out of the same transaction or series of transactions that the Foreclosure Action arose out of, and therefore those claims could have been litigated in the Foreclosure Action. Counts VII, IX, and XI are barred by the res judicata doctrine as to BONYM and the defendants that are in privity with BONYM.

**C.    Ruling**

Heart's claims against BONYM and the defendants that are in privity with BONYM are barred by the res judicata doctrine. Counts III, IV, V, VII, IX, and XI are dismissed as to BONYM, MERS, Shellpoint, SPS, and BANA. Because Heart would not be able to cure this defect in those claims by amendment, the dismissal is with prejudice.

24

III. **Remaining Claims**

    A.    **Count VIII**

        Count VIII alleges a claim pursuant to Title 16 Code of Federal Regulations Section 433.2. [Amended Complaint at pg. 35.]

>         16 C.F.R. § 433.2 is [a Federal Trade Commission] rule called the "Holder Rule." It requires sellers to include in their consumer contracts a notice that any holder of the contract is subject to whatever claims or defenses the debtor could assert against the seller. It is "an unfair or deceptive act or practice" for a seller to (a) "[t]ake or receive a consumer credit contract" or (b) "accept . . . the proceeds of any purchase money loan" if the contract does not have the notice. 16 C.F.R. § 433.2(a)–(b); Kilgore v. Keybank, N.A., No. 08-02958-TEH, 2009 WL 4981131, at * 2 (N.D. Cal. Dec. 16, 2009).

Thompson v. Navy Fed. Credit Union, Case No. 23-cv-01370-LB, 2024 WL 4050392, at *5 (N.D. Cal. Sept. 3, 2024) (alterations in Thompson). However, this rule does not apply in the real property mortgage context. See Araki v. Bank of Am., Civil No. 10-00103 JMS/KSC, 2010 WL 5625970, at *6 (D. Hawai`i Dec. 14, 2010) (citing Murphy v. F.D.I.C., 2010 WL 4780380, at *2 (3d Cir. Nov. 24, 2010) (unpublished) (citing 16 C.F.R. § 433.2 (2005); In re Woodsbey, 375 B.R. 145, 150 (Bankr. W.D. Pa. 2007); and Johnson v. Long Beach Mortg. Trust, 451 F. Supp. 2d 16, 55 (D.D.C. 2006)); Stoudt v. Alta Fin. Mortg., 2009 WL 661924, at *2 (E.D. Pa. Mar. 10, 2009)).

Count VIII therefore fails to state a plausible claim
for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To
survive a motion to dismiss, a complaint must contain sufficient
factual matter, accepted as true, to state a claim to relief
that is plausible on its face." (citation and internal quotation
marks omitted)). Further, because it is absolutely clear that
Heart cannot cure the defect in the Section 433.2 claim, the
dismissal must be with prejudice, i.e., without leave to amend.
See Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995)
(per curiam) ("Unless it is absolutely clear that no amendment
can cure the defect, however, a pro se litigant is entitled to
notice of the complaint's deficiencies and an opportunity to
amend prior to dismissal of the action." (citations omitted)).

Count VIII is therefore dismissed with prejudice as
all defendants.

**B.    Claims Against Nationstar**

Heart's claims in Counts I, II, VI, VIII, X, XII, and
XIII have been dismissed with prejudice as to all of the
defendants. Heart's claims against Nationstar in Counts III, IV,
V, VII, IX, and XI remain because this Court cannot determine
whether Nationstar is in privity with the other defendants.
However, because the Amended Complaint pleads virtually no
factual allegations regarding Nationstar, Heart's claims against
Nationstar in Counts III, IV, V, VII, IX, and XI are dismissed

for failure to state a claim upon which relief can be granted. The dismissal is without prejudice because it may be possible for Heart to plead plausible claims against Nationstar.

Heart is granted leave to file a second amended complaint that alleges only Counts III, IV, V, VII, IX, and XI against Nationstar. Heart shall file the second amended complaint by **February 18, 2025**. Heart does not have leave to add any new parties nor any new claims against Nationstar. If Heart fails to file a second amended complaint by **February 18, 2025**, the instant case will be closed. In other words, if Heart wishes to pursue the dismissed claims against Nationstar, Heart would be required to file a new action.

## CONCLUSION

For the foregoing reasons, Heart's Amended Complaint, filed March 25, 2024, is DISMISSED IN ITS ENTIRETY. The dismissal of Counts I, II, VI, VIII, X, XII, and XIII is WITH PREJUDICE as to all defendants. The dismissal of Counts III, IV, V, VII, IX, and XI is WITH PREJUDICE as to BONYM, BANA, SPS, Shellpoint, and MERS. Thus, the SPS Motion, [filed 6/25/24 (dkt. no. 64),] the BONYM Defendants' SPS Joinder, [filed 6/28/24 (dkt. no. 68),] the BANA Motion, [filed 7/10/24 (dkt. no. 69),] the SPS BANA Joinder, [filed 7/11/24 (dkt. no. 70),] and the BONYM Defendants' BANA Joinder, [filed 7/11/24 (dkt. no. 71),] are GRANTED. There being no remaining claims against BONYM,

BANA, SPS, Shellpoint, and MERS, the Clerk's Office is DIRECTED to terminate them as parties on **February 18, 2025.**

The dismissal of Counts III, IV, V, VII, IX, and XI is WITHOUT PREJUDICE as to Nationstar. Heart is granted leave to file a second amended complaint that alleges only Counts III, IV, V, VII, IX, and XI against Nationstar. Heart shall file the second amended complaint by **February 18, 2025.** The Nationstar Motion, [filed 7/15/24 (dkt. no. 72),] is therefore GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 31, 2025.



/s/ Leslie E. Kobayashi

Leslie E. Kobayashi
Senior U.S. District Judge

**HANNAH K HEART VS. THE BANK OF NEW YORK MELLON, ET AL; CV 23-00158 LEK-WRP; ORDER DISMISSING PLAINTIFF'S AMENDED COMPLAINT, [FILED 3/5/24 (DKT. NO. 35)], WITH LIMITED LEAVE TO AMEND**